UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHATIKA GRIFFIN,

                     Plaintiff,      17-CV-00426-FPG

v.                               DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.

## Introduction

Plaintiff Shatika Griffin brought this action pursuant to Title II and Title XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability and supplemental security income benefits. *See* Complaint (Docket # 1). Presently before the Court are the parties' competing motions for judgment on the pleadings. *See* Docket ## 9, 10. For the reasons that follow, plaintiff's motion for judgment on the pleading (Docket # 9) is **granted**, the Commissioner's motion (Docket # 10) is **denied**, and the matter is remanded to the Commissioner for further proceedings.

## Background and Procedural History

On June 19, 2013, plaintiff filed an application for supplemental security income alleging disability beginning on September 11, 2011. Administrative Record ("AR.") at 193-08.[1] On June 24, 2013, plaintiff also filed an application for disability insurance benefits alleging the same disability onset date. AR. at 186-92. After the applications were denied, she timely requested a hearing.

---

[1] Plaintiff's abbreviated application for supplemental security income was filed on June 19, 2013, while her complete application was filed on July 2, 2013. AR. at 203-08.

1

Plaintiff appeared and testified before Administrative Law Judge Eric L. Glazer ("the ALJ") at hearings held on May 21, 2015 and November 5, 2015. AR. at 34-74. A Vocational Expert ("VE") David A. Festa, also testified at the hearing. The ALJ issued an unfavorable decision on January 4, 2016. AR. at 13-33. Plaintiff then timely requested review by the Appeals Council, which the Council denied on March 21, 2017, making the ALJ's decision the final decision of the Commissioner. AR. at 1-3. Plaintiff subsequently filed this lawsuit.

## Legal Standard

The scope of this Court's review of the ALJ's decision denying benefits to plaintiff is limited. It is not the function of the Court to determine *de novo* whether plaintiff is disabled. <u>Brault v. Soc. Sec. Admin., Comm'r</u>, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

This deferential standard of review does not mean, however, that the Court should simply "rubber stamp" the Commissioner's determination. "Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially

non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *see also Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). While not every factual conflict in the record need be explicitly reconciled by the ALJ, "crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983). Moreover, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

## Discussion

Plaintiff argues that the ALJ's decision was not supported by substantial evidence because he failed to determine whether plaintiff's severe mental health impairments met or medically equaled Listing 12.05C. *See* Pl's Br. 11. Plaintiff contends that this was a reversible error that requires remand.[2] This Court agrees.

At step one, the ALJ found that Griffin had not engaged in substantial gainful activity since the alleged onset date of September 11, 2011 through her date last insured of March 31, 2014. AR.

---

[2] Plaintiff makes several other arguments and for the reasons discussed below, the Court need not address them.

at 18. At step two, the ALJ found that plaintiff suffered from several severe impairments: depressive disorder, anxiety disorder, and obesity. *Id.* At step three of the analysis, the ALJ found that the severity of plaintiff's mental impairments did not meet or equal the criteria of Listings 12.04 and 12.06. AR. at 18-19. The ALJ then determined that plaintiff retained the residual functioning capacity ("RFC") to perform less than the full range of light work with additional limitations. Specifically, the ALJ found that plaintiff could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; sit, stand and walk for six hours; be exposed to unprotected heights, moving mechanical parts, humidity, wetness, dust, and odors; perform only simple, routine, repetitive tasks and make simple work-related decisions; occasionally deal with changes in a work setting, could frequently respond appropriately to supervisors, coworkers and the public. AR. at 20. At step four, the ALJ found that plaintiff was able to perform her past relevant work, and ultimately determined that she was not disabled. AR at 27-28.

At the time the ALJ issued his decision,[3] Listing 12.05 was defined as intellectual disability, and described as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.05 (effective Aug. 12, 2015 to May 23, 2016). To satisfy the "C" requirement of Listing 12.05, the regulations provide that in addition to showing subaverage intellectual functioning, the claimant has to demonstrate "[a] valid verbal, performance, or full-scale IQ of 60

---

[3] On August 1, 2013, Listing 12.05 was amended to change the phrase "Mental Retardation" to "Intellectual Disability," without changing the substantive requirements of the listing. In her brief, plaintiff refers to the version of Listing 12.05C that was in effect at the time of plaintiff's applications. *See* Pl.'s Br. 11 n.3. The Court is not following plaintiff's reasoning, and, instead is relying on the relevant version of Listing 12.05 that was in effect at the time the ALJ rendered his decision on January 4, 2016. On September 26, 2016, the SSA finalized new regulations revising this portion of its Listings, instructing "Federal courts [to] . . . review [SSA's] . . . final decisions using the rules that were in effect at the time [it] issued the decisions." *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 6613801 n.1 (Sept. 26, 2016).

through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" *Id.*; *Talavera v. Astrue*, 697 F.3d 145, 151–52 (2d Cir. 2012). Therefore, in order to be found disabled under Listing 12.05(C), plaintiff must demonstrate: "(1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 through 70; and (3) another severe physical or mental impairment." *Miller v. Astrue*, No. 3:07-CV-1093(LEK/VEB), at *4 (N.D.N.Y. Aug. 19, 2009).

Notably, the Government here concedes that the ALJ did not consider Listing 12.05 in his decision, however, it argues that the ALJ correctly determined that plaintiff did not meet her burden under Listing 12.05C because she failed to demonstrate that she was suffering from intellectual disability. Def's Br. at 16-19. (Docket # 10-1). The Court recognizes that "[a]n ALJ's unexplained conclusions . . . [regarding claimant's impairments] may be upheld where other portions of the decision and other clearly credible evidence demonstrate that the conclusion is supported by substantial evidence," *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014)(internal quotation and citation omitted). However, this case falls into that category. Moreover, a review of the record leaves very little doubt about the ALJ's failure to examine the record in light of Listing 12.05 and to consider all the evidence in his determination of whether or not plaintiff has met her burden under Listing 12.05C. Therefore, remand is required. *Hochstine v. Colvin*, No. 1:14-CV-00916(MAT), 2016 WL 3251313, at *2 (W.D.N.Y. June 14, 2016) (failure to consider Listing 12.05(C) and to weigh the opinion of a consultative psychologist were errors requiring remand); *Antonetti v. Barnhart*, 399 F. Supp. 2d 199, 201 (W.D.N.Y. 2005) (remand is required when the ALJ gave no explanation of why the criteria of Listing 12.05C was not met);

5

*Green v. Colvin*, 14-CV-6632P, 2016 WL 943620, *12 (W.D.N.Y. Mar. 14, 2016) (remand was required for the ALJ to consider whether plaintiff met the requirements of Listing 12.05C).

The only reference to Listing 12.05C in the decision, though not clearly stated, may be inferred from the ALJ's mentioning of plaintiff's full-scale IQ score of 63. AR. at 24-25, 27. It has been recognized by the Courts of this Circuit that evidence of a valid IQ score "suffices to meet [claimant's] prima facie burden of establishing that she suffers from 'significantly subaverage general intellectual functioning ... initially manifested ... before age 22.'" *Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012). Here, however, the ALJ's references to plaintiff's IQ score was simply his recitation of findings and concerns that Dr. Santarpia expressed during the intelligence evaluation conducted on behalf of the Commissioner, and not the ALJ's own weighing of plaintiff's IQ against the other factors of Listing 12.05C. To determine plaintiff's IQ score, Dr. Santarpia performed a series of standardized tests, based on which she concluded that the plaintiff's full-scale IQ score of 63 was considered valid and reliable. AR. at 320-24. She also, however, cautioned against using this result due to her suspicion of plaintiff's lack of effort or malingering exhibited during testing, which she primarily based on plaintiff's raising four children and graduating from high school in a regular education classroom setting. AR. at 321. Since the regulations refer to "valid" IQ scores for purposes of determining intellectual disability, the ALJ here was supposed to either rely on the only existing IQ score, or reject it as invalid and offer an explanation as to why he thought it was inconsistent with the record. The ALJ has done neither. *Velez v. Astrue*, No. 11-CV-881S, 2013 WL 321552, at *5 (W.D.N.Y. Jan. 28, 2013) ("Courts generally accept that an ALJ may reject an IQ score as invalid when it is inconsistent with the record."); *Edwards v. Astrue*, No. 5:07-CV-898 (NAM/DEP), 2010 WL 3701776, at *5 (N.D.N.Y. Sept. 16, 2010) ("An ALJ is permitted to reject an IQ score as invalid when it is inconsistent with

the record but must explain the basis for that decision."). It bears noting that suspicions of malingering can provide basis for an ALJ to consider an IQ score invalid. *Baszto v. Astrue*, 700 F. Supp. 2d 242, 248 (N.D.N.Y. 2010) (plaintiff's IQ score was found invalid due to the possibility of malingering). However, "valid scores . . . must generally be accepted." *Lewis v. Colvin*, No. 12-CV-01317 WGY, 2014 WL 6687484, at *6 (N.D.N.Y. Nov. 25, 2014). Here, while giving Dr. Santarpia's evaluation great weight, the ALJ simply disregarded the portion of her opinion where she found plaintiff's IQ score to be valid and reliable, and failed to provide a detailed explanation of why he believed plaintiff's IQ score was inconsistent with the rest of the record.

Even though plaintiff's IQ score of 63 meets the introductory burden under Listing 12.05C, in order to stablish that plaintiff suffers from intellectual disability, the ALJ had to also analyze the other evidence contained in the record to determine whether or not plaintiff suffered from deficits in adaptive functioning. *Talavera*, 697 F.3d at 153 ("[w]hile a qualifying IQ score may be *prima facie* evidence that an applicant suffers from significantly subaverage general intellectual functioning, . . . there is no necessary connection between an applicant's IQ scores and her relative adaptive functioning.")(internal quotation and citation omitted).

Plaintiff argues that she has met her burden under the second prong of Listing 12.05C by referring to her own statements made to Dr. Balderman about attending special education classes and Dr. Balderman's opinion about her reading abilities. Pl.'s Br. 13. Plaintiff is correct that attendance of special education classes or poor reading abilities have been recognized by fellow courts as possible examples of deficits in adaptive functioning. *Hochstine*, 2016 WL 3251313, at *3; *Johnson v. Colvin*, No. 13-CV-1055-JTC, 2014 WL 6883606, at *5 (W.D.N.Y. Dec. 4, 2014); *Davis*, 2010 WL 2925357, at *4; *Barton*, 2009 WL 5067526, at *7. However, the record regarding plaintiff's reading abilities and her attendance of high school was very limited and for the most

part inconsistent. For instance, the records regarding plaintiff's attendance of special education classes contain obvious discrepancies between plaintiff's statements made to Dr. Santarpia about attending high school in a regular setting (AR. at 315) and her statement made to Dr. Balderman about attending special education classes (AR. at 328). Because the ALJ is tasked with ensuring fairness of the disability hearing, failure to clarify inconsistencies of a record has been well-recognized as the ALJ's violation of his duty to develop the record, which typically warrants remand. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal citation omitted); *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *Bonet v. Astrue*, No. 05 CIV. 2970(LTS/THK), 2008 WL 4058705, at *24 (S.D.N.Y. Aug. 22, 2008). What is particularly striking about this discrepancy is that the ALJ acknowledged it and used it to support Dr. Santarnia's suspicions about the validity of plaintiff's IQ test, instead of resolving the inconsistency by requesting plaintiff's academic records or by obtaining plaintiff's testimony. AR. at 27; *see Hochstine*, 2016 WL 3251313, at *3 (academic records were relevant to prove plaintiff's deficits in adaptive functioning for purposes of Listing 12.05C). Similarly to plaintiff's educational records, the evidence regarding plaintiff's reading abilities is limited to a single note of Dr. Balderman, who opined that plaintiff's reading was poor. AR. at 328. Since plaintiff's poor reading abilities could lead to the conclusion of inadequate adaptive functioning, the ALJ was supposed to develop the record further by contacting plaintiff's treating physicians, Dr. Balderman, or plaintiff herself for clarification of her ability to read.

Plaintiff's attendance of special education classes and her reading abilities are just possible examples of the areas of adaptive functioning where plaintiff might have deficits for purposes of meeting her burden under Listing 12.05C. In fact, not all areas of adaptive functioning need to be limited for purposes of meeting the requirements of the listing. The courts of this Circuit have

ruled that "deficits in only two of the following adaptive functioning skill areas are required: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Lyons v. Colvin*, No. 7:13-CV-00614, 2014 WL 4826789, at *10 (N.D.N.Y. Sept. 29, 2014); *see also Talavera*, 697 F.3d at 152 (inadequate adaptive functioning determined plaintiff's ability to satisfactorily navigate activities such as living on one's own, taking care of children without help, paying bills, and avoiding eviction); *Barton*, 2009 WL 5067526, at *8 ("the term 'deficits in adaptive functioning' must allow for adaptive functioning in some areas, as long as deficits are present in other areas of functioning"). For this reason, the Commissioner's argument that plaintiff's completion of high school, caring for four children, and having continuous employment are examples of her adequate functioning and lack of deficits, must fail because the existence of such abilities does not ensure the lack of deficits in other areas of adaptive functioning to sustain plaintiff's burden under Listing 12.05C. *See Geil v. Colvin*, No. 14-CV-6463, 2015 WL 9217026, at *9 (W.D.N.Y. Dec. 16, 2015) (the ALJ is supposed to evaluate activities "that comprise adaptive functioning beyond just activities of daily living")(internal quotation and citation omitted); internal citation omitted).

In fact, the record contains evidence suggestive of plaintiff's limitations in social and interpersonal skills, communication, and self-care, which should have been considered by the ALJ. Specifically, following plaintiff's mental health arrest, her mother reported that plaintiff did not shower, her hygiene was poor, and she was not able to take care of herself. AR. at 254. She also reported that plaintiff had recently moved into her house because plaintiff's apartment was uninhabitable due to the presence of cockroaches. *Id.* Because plaintiff was pregnant with another child at the time, her mother opined that plaintiff should get an abortion because she was not able

to take care of herself or her children. AR. at 257-60. Also, plaintiff testified that while being employed, she often kept to herself without interacting with people. AR. at 47-48. Additionally, plaintiff's treating psychiatrists continuously noted plaintiff's struggle with managing her life and housing for herself and her children, maintaining boundaries with people, and struggling with being independent. AR. at 267-84, 305.

The Court finds that, because of the limited and inconsistent evidence regarding plaintiff's deficits in adaptive functioning, the ALJ should have analyzed whether the record contains sufficient evidence of plaintiff's deficits, and, as a result, should have determined whether she has met her burden under 12.05C. Consequently, the Court finds that it is improper for the Commissioner to engage this Court now in *post hoc* rationalization of the ALJ's failure to address plaintiff's limitations in light of Listing 12.05C. These matters should have been addressed at the administrative level in the first place, and not by this Court. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (internal citations omitted); *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 144 (N.D.N.Y. 2012)("Subsequent arguments by the Commissioner detailing the substantial evidence supporting the ALJ's decision are not a proper substitute for the ALJ engaging in the same evaluation."); *Black v. Berryhill*, No. 17-CV-557-FPG, 2018 WL 4501063, at *6 (W.D.N.Y. Sept. 20, 2018) ("[T]he Commissioner may not substitute her own rationale when the ALJ failed to provide one.").

The Court finds – and the Commissioner does not appear to argue otherwise - that plaintiff has satisfied the third prong of Listing 12.05C because the ALJ determined at step two that plaintiff was suffering from severe impairments, such as depressive disorder, anxiety disorder, and obesity. *Johnson*, 2014 WL 6883606, at *6 ("the proper test for evaluating an additional impairment under

Listing 12.05(C) is the same test used at step two of the sequential evaluation to determine whether an impairment is 'severe.'")(internal citations omitted). Therefore, the Court finds that plaintiff's severe impairments impose significant work-related limitation of function for purposes of Listing 12.05C. *Hill v. Astrue*, No. 1:11-CV-0505 MAT, 2013 WL 5472036, at *8 (W.D.N.Y. Sept. 30, 2013).

Because the ALJ has failed to address whether plaintiff's impairments meet or medically equal Listing 12.05C in step three of the analysis, develop the record pertaining to plaintiff's deficits in adaptive functioning, and resolve its inconsistencies, this Court finds that the ALJ's remaining analysis is flawed and the Court does not need to reach plaintiff's remaining arguments. *See Green*, 2016 WL 943620, *12; *Barton*, 2009 WL 5067526, at *8–9; *Kennerson v. Astrue*, No.10-CV-6591(MAT), 2012 WL 3204055, at *14 (W.D.N.Y. Aug.3, 2012). Only after the ALJ considers the evidence in the record with respect to Listing 12.05 will the Court be able to determine if the ALJ's conclusions regarding plaintiff's RFC is supported by substantial evidence. *See Davis*, 2010 WL 2925357, at *3 ("It is impossible to determine whether the ALJ's decision is supported by substantial evidence because he did not document the listing criteria used and evidence on [sic] the record indicates that Plaintiff may meet listing-level criteria."); *Black*, 2018 WL 4501063, at *6 (remand was warranted where the court could not conclude that substantial evidence supports the finding that plaintiff failed to demonstrate a deficit in adaptive functioning).

Therefore, remand for further proceedings is warranted here so that the Commissioner can develop the record regarding plaintiff's educational records and reading abilities, obtain clarification regarding plaintiff's IQ score from Dr. Santarnia, and supplement the record regarding plaintiff's level of adaptive functioning for purposes of assessing Listing 12.05C. For this reason, reversal solely for calculation of benefits is not appropriate because "this is not a situation where

application of the correct legal standard could lead to only one conclusion." *Hill v. Astrue*, No. 1:11-CV-0505(MAT), 2013 WL 5472036, at *9 (W.D.N.Y. Sept. 30, 2013) (internal citation omitted).

## **Conclusion**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Docket # 9) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 10) is **denied**, and the case is remanded for further administrative proceedings consistent with this Decision and Order pursuant to sentence four of 42 U.S.C. §405(g). The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: January 30, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court